UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANTHONY COVARRUBIAS, | No. ED CV 08-1696-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 3, 2008, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 7, 2009, and February 23, 2009. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 4, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 13, 1957. [Administrative Record ("AR") at 46, 48.] He has a high school education, and has past relevant work experience as a handyman and truck driver. [AR at 54, 58.]

On November 22, 2005, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since July 11, 2003, due to congestive heart failure and high blood pressure. [AR at 48-59.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 18-27, 31.] A hearing was scheduled for March 17, 2008. [AR at 9, 34.] On March 14, 2008, plaintiff notified the Social Security Administration that he was unable to attend the hearing because he had moved to Huntington Beach, California and did not have transportation to travel more than 75 miles from his residence to the hearing location. [AR at 9, 43-44.] Plaintiff's request to reschedule the hearing was denied, and the ALJ determined that plaintiff waived his right to appear. [AR at 9.] There is no evidence in the record that an administrative hearing was held in plaintiff's absence. The ALJ issued an unfavorable decision. [AR at 6-15.] On May 15, 2008, plaintiff requested review of the hearing decision. [AR at 45.] When the Appeals Council denied plaintiff's request for review on September 26, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, App. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the

claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since November 22, 2005, the date of the application. [AR at 11.] At step two, the ALJ concluded that plaintiff has a "severe" impairment "of the cardiovascular system from dilated cardiomyopathy." [AR at 11-12.] At step three, the ALJ determined that plaintiff's impairment does not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform light work and specifically that plaintiff can "can occasionally lift and/or carry 20 pounds and frequently 10 pounds" and "can stand and/or walk two hours in an eight-hour work day and sit for six hours." [AR at 12-14.] At step four, the ALJ determined that plaintiff was not capable of performing his past relevant work. [AR at 14.] At step five, relying on Medical-Vocational Rule 202.20, the ALJ concluded that due to plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that plaintiff is capable of performing. [AR at 14-15.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 15.]

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ (1) failed to properly consider the consultative internal medicine examination, (2) failed to properly consider the consultative psychiatric examination, (3) failed to properly consider the state agency opinion, and (4) erred in failing to obtain vocational expert testimony concerning the effects of plaintiff's non-exertional limitations. [Joint Stipulation ("JS") at 3-4, 6-8, 10-15, 17-18.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.    THE ALJ'S RFC DETERMINATION**

Plaintiff contends that the ALJ erred in his consideration of the medical evidence, including the assessments of Dr. Bryan H. To, Dr. John S. Woodard, and Dr. J. Ross concerning plaintiff's non-exertional functional limitations, which in turn erroneously impacted the ALJ's RFC determination. [JS at 3-4, 6-8, 10-12.]

As an initial matter, the ALJ improperly asserted that plaintiff has the RFC to perform "light work." [AR at 12.] In making this determination, the ALJ cited 20 C.F.R. § 416.967(b), which defines light work as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). A light work job may require "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. However, "[t]o be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." Id.; see also 20 C.F.R. § 404.1567(b) (same "light work" definition). In the Joint Stipulation, defendant concedes that the ALJ incorrectly concluded that plaintiff is capable of light work and contends that the ALJ should have found that plaintiff has the RFC to perform only sedentary work.[2] [JS at 4-5; AR at 12.] "Jobs are sedentary if walking and standing are required

---

[2]    Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing

occasionally." 20 C.F.R. §§ 404.1567(a), 416.967(a). "The major difference between sedentary and light work is that most light jobs -- particularly those at the unskilled level of complexity[3] -- require a person to be standing or walking most of the workday." Social Security Ruling[4] 83-14. Based on the ALJ's own determination limiting plaintiff to only two hours of standing and/or walking during an eight-hour workday, plaintiff is not capable of performing a full range of light work. Hence, he has the RFC to engage in, at most, sedentary-level work.

Defendant asserts that the ALJ's error in determining that plaintiff could do <u>light</u> rather than <u>sedentary</u> work was harmless. [JS at 5.] The Court disagrees. The ALJ relied on his light-work RFC determination in concluding that plaintiff was not disabled according to the Medical-Vocational Guidelines ("the grids").[5] [AR at 14-15.] As explained below, given plaintiff's age, education level, and prior work experience, if plaintiff was only able to do sedentary work, then the grids may have required the ALJ to find that plaintiff has been disabled for all or part of the relevant time period. See 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.12. Since the ALJ's improper finding that plaintiff was capable of light work may have impacted the disability

---

is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] In the decision, the ALJ determined that plaintiff's past relevant work experience involved only unskilled work. [AR at 14.]

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[5] "The Medical-Vocational Guidelines, also known as "the grids," are a table system for determining whether claimants' impairments are disabling. See 20 C.F.R. Part 404, Subpt. P, App. 2. "The grids categorize jobs by their physical-exertional requirements and consist of three separate tables - one for each category: 'maximum sustained work capacity limited to sedentary work,' 'maximum sustained work capacity limited to light work,' and 'maximum sustained work capacity limited to medium work.' Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (citations and footnote omitted).

determination in this case, the error was not harmless. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (an error is harmless if it is "clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination") (quotations omitted).

In addition, the ALJ's description of plaintiff's RFC -- i.e., that plaintiff can lift and/or carry ten pounds frequently and twenty pounds occasionally and can sit for six hours and stand and/or walk for two hours in an eight-hour workday -- was improper as the RFC determination did not incorporate three medical opinions concerning plaintiff's non-exertional functional limitations.[6] To properly determine plaintiff's RFC to work, the ALJ was required to consider all of the relevant medical opinions as well as the combined effects of all of plaintiff's impairments, even those not found to be severe. See 20 C.F.R. §§ 404.1545(a), 416.945(a) ("We will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not "severe" . . . when we assess your [RFC]. . . We will assess your [RFC] based on all of the relevant medical and other evidence. . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."); see also Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe" when assessing the RFC) (quoting SSR 96-8p) (internal quotations omitted).

### 1. Dr. Ross' Assessment

On December 15, 2006, Dr. Ross, a non-examining state agency medical consultant, completed a Physical Residual Functional Capacity Assessment regarding plaintiff's limitations. [AR at 166-70.] Among other things, Dr. Ross concluded that plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk, with normal breaks, for a total of approximately six hours in an eight-hour workday; and sit, with normal breaks, for a total of approximately six hours in an eight-hour workday. [AR at 167.] Dr. Ross found that plaintiff has

---

[6] Some examples of non-exertional limitations include difficulty functioning because of nervousness, anxiety or depression; difficulty with concentration; visual limitations; difficulty tolerating a physical feature of a particular work setting, such as fumes; and postural and manipulative limitations. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

no manipulative or communicative limitations, but that he does have some postural, visual, and environmental limitations. [AR at 167-69.] Specifically, he opined that plaintiff can never climb ladders, ropes, or scaffolds; has limited far visual acuity; and should avoid even moderate exposure to workplace hazards, such as machinery and heights. [Id.]

In the decision, the ALJ asserted that he considered the medical opinion evidence in determining plaintiff's RFC. [AR at 12.] The ALJ said that he adopted the state agency physicians' findings, including Dr. Ross', indicating that plaintiff can do light work. [AR at 13.] "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p. See 20 C.F.R. §§ 404.1545(d), 416.945(d) ("Some medically determinable impairment(s), such as . . . impairment(s) of vision . . . and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your [RFC]."). Here, although the ALJ purported to adopt the state agency physician's findings, he failed to provide more than a superficial discussion of those findings; did not include Dr. Ross' assessments concerning plaintiff's postural, environmental, and visual limitations in the RFC determination; and offered no explanation for excluding them. While an ALJ is not required to "agree with everything . . . [a doctor] says in order to hold that his [findings] contain[] 'substantial evidence'" (Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (citing Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988)), the ALJ is not permitted to selectively choose from an opinion to support the RFC determination. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify his conclusion). As such, the ALJ's selective consideration of Dr. Ross' assessment and failure to explain why parts of his assessment were not included in the RFC determination was improper.

### 2. Dr. To's Assessment

On December 6, 2006, Dr. To assessed plaintiff's functional abilities and limitations. [AR at 157-61.] After examining plaintiff and his medical records, Dr. To diagnosed him with

depression and dilated cardiomyopathy with congestive heart failure. [AR at 160.] He opined that plaintiff has no functional limitations with regard to seeing, hearing, sitting, or using his hands for manipulative movements. [AR at 160-61.] He also found that plaintiff can push, pull, lift, and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight-hour workday; and walk on uneven terrain, climb ladders, work with heights, bend, kneel, stoop, crawl and crouch, all on a frequent basis. [Id.] Dr. To concluded that plaintiff has an environmental limitation, in that he should be restricted "from working with heavy and moving machineries." [AR at 161.]

With regard to Dr. To's findings, the ALJ asserted that the state agency physicians' findings are "consistent with . . . the opinion of the internal medicine consultative examiner, Dr. Bryan To, who also thought [plaintiff] could do light work." [AR at 13.] The ALJ did not state whether he adopted or rejected Dr. To's opinion concerning plaintiff's limitations, and did not include Dr. To's opinion that plaintiff should be restricted from working with heavy and moving machinery in the RFC determination. "The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." Tackett, 180 F.3d at 1102; Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ need not discuss all of the evidence presented but must explain why he rejected "significant probative evidence") (citation omitted). Just as it was erroneous for the ALJ to provide no explicit reasons for disregarding portions of Dr. Ross' assessment, the ALJ also erred in failing to explicitly adopt or properly reject Dr. To's finding that plaintiff cannot work with certain machinery. See Hammock, 879 F.2d at 500-04 (error for the ALJ to "not consider the combined effect of all of [plaintiff's] impairments on [his] ability to return to work" and to "fail[] to articulate any reasons for disregarding" a physician's assessment of plaintiff's symptoms and limitations).

### 3. Dr. Woodard's Assessment

On November 28, 2006, Dr. Woodard conducted a "complete psychiatric evaluation" of plaintiff. [AR at 154-56.] Dr. Woodard diagnosed plaintiff with depressive disorder, not otherwise specified, and opined that he had slight to moderate psychosocial stressors, fair adaptive functioning, and "functional attention deficit and motivational deficit associated with depression and

anxiety." [AR at 156.] With regard to plaintiff's "adaptation to work and work-like situations," Dr. Woodard opined that plaintiff is slightly impaired in his ability to interact with supervisors, coworkers, and the public; for maintaining concentration, attention, and withstanding normal stress in the workplace; for performing detailed and complex tasks; and for completing a normal workday without interruption. [Id.] However, he found that plaintiff is not impaired in his ability to perform simple and repetitive tasks or to work continuously without special supervision. [Id.]

In the decision, the ALJ noted Dr. Woodard's assessment that plaintiff has depressive disorder, not otherwise specified, which causes slight restrictions in his ability to work. [AR at 13.] However, the ALJ did not expressly reject or adopt (or otherwise discuss) Dr. Woodard's findings and did not include any of plaintiff's limitations assessed by Dr. Woodard in the RFC determination. For the same reasons that the ALJ erred in failing to either properly reject or incorporate into his RFC determination the opinions of Dr. Ross and Dr. To, so too did the ALJ fail to properly incorporate or reject Dr. Woodard's opinion that plaintiff would be slightly impaired during work interactions and in his ability to concentrate, withstand stress, and perform various work-related tasks. Tackett, 180 F.3d at 1102; Hammock, 879 F.2d at 500-04; 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not "severe" . . . when we assess your [RFC]."). The ALJ's failure to properly reject or incorporate the medical opinions concerning plaintiff's non-exertional limitations discussed herein into the RFC determination warrants remand.

**B.   THE ALJ'S GRIDS ANALYSIS**

Plaintiff contends that the ALJ erred in relying on the grids during step five of the sequential analysis and that the ALJ should have obtained testimony from a vocational expert to determine if plaintiff is able to work. [JS at 13-15, 17-18.]

At step five of the sequential evaluation process, the burden shifts to the Commissioner to prove that, based on plaintiff's RFC, age, education, and past work experience, he can perform some type of substantial gainful activity that exists in significant numbers in the national economy. See Smolen v. Chater, 80 F.3d at 1273, 1291 (9th Cir. 1996); see also 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v); Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). The Commissioner (or ALJ) may meet this burden in one of two ways: (1) by obtaining testimony from a vocational expert, or (2) by referencing the grids. "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006) (citations omitted). However, when a claimant has both exertional and non-exertional limitations, "the grids are inapplicable when a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations omitted).

In the decision, the ALJ purportedly relied on the grids to determine that plaintiff is not disabled. [AR at 14-15.] Specifically, the ALJ cited, among other Social Security Rulings, SSR 83-14, which provides that the grids may be used as a framework for determining a claimant's disability status when the claimant has "a nonexertional limitation or restriction imposed by a medically determinable impairment." SSR 83-14. The ALJ found that "[i]f [plaintiff] had the [RFC] to perform the full range of light work, considering [his] age, education, and work experience, a finding of 'not disabled' would be [directed by §] 202.20" of the grids. [AR at 14.] The ALJ concluded that plaintiff's "additional limitations" did not affect his ability to perform unskilled light work, and that according to the framework of § 202.20 of the grids, plaintiff is "not disabled." [AR at 14-15.]

The ALJ's grids analysis was flawed for several reasons. First, because the ALJ's RFC determination was erroneous, his grids analysis that depended on his RFC determination was also improper. "[I]f the grids fail to describe *accurately* a claimant's particular limitations, the [ALJ] may *not* rely upon the grids *alone* to show availability of jobs for the claimant." Gonzalez v. Secretary of Health and Human Servs., 784 F.2d 1417, 1419 (9th Cir. 1986) (citations and quotations

omitted) (emphasis in original); see Jones v. Heckler, 760 F.2d at 993, 998 (9th Cir. 1985) (the ALJ should rely on the grids "only when the grids accurately and completely describe the claimant's abilities and limitations"). Section 202.20 of the grids pertains to a "younger individual,"[7] who is a high school graduate, with unskilled or no prior work experience, and who has the RFC to do light work. 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.20. But § 202.20 does not accurately describe plaintiff's limitations, in part because according to the ALJ's description of plaintiff's RFC, plaintiff was at most capable of performing sedentary, not light work. [See AR at 12; JS at 4-5.] Also, plaintiff's non-exertional functional limitations might impact on his ability to work "in ways not contemplated by the grids" because even if he has the RFC to physically perform jobs at a certain exertional level, he "may not be able to adjust to [those] jobs because of non-exertional limitations." See Lounsburry, 468 F.3d at 1115. As such, the ALJ erred in solely relying on the grids in concluding that plaintiff is not disabled, because § 202.20 does not accurately account for all of plaintiff's limitations.[8]

Second, although not raised by the parties, the Court notes that the ALJ's grids analysis may have been erroneous due to plaintiff's age. In the decision, the ALJ asserted that plaintiff was 46 years old when he filed his application. [AR at 14.] In fact, plaintiff was 48 years old when he filed his application on November 22, 2005 [see AR at 48], and he was approximately 51 years

---

[7] "The term younger individual is used to denote an individual age 18 through 49." 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.00(h)(1).

[8] Defendant asserts that the ALJ's reliance on grid § 202.20 was harmless because "[h]ad the ALJ appl[ied] the correct . . . [grids] rules for sedentary work . . . for a younger individual between ages 45-49, with a high school education, and non-transferable skills," a finding of "not disabled" would still be warranted. [JS at 5] (citing 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.21). But grid § 201.21 only applies to individuals whose prior work experience is either "skilled or semi-skilled." 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.21. In the decision, the ALJ explicitly found that plaintiff's past work is unskilled according to 20 C.F.R. § 416.968. [AR at 14.] As such, § 201.21 of the grids does not apply to plaintiff. The Court also notes that no grid section seems to apply to a "younger individual age 45-49" matching plaintiff's high school education level, unskilled prior work experience, and RFC to engage in sedentary work. See 20 C.F.R. Part 404, Subpt. P, App. 2, Table No. 1. Furthermore, as explained below, it is unclear that in considering plaintiff's disability status he should have been found to be a "younger individual."

old at the time of the ALJ's decision.[9] In determining plaintiff's disability status, the ALJ was required to consider each of the age categories applicable to plaintiff during the time period for which the Social Security Administration must determine if he has been disabled, rather than focusing only on plaintiff's age at the date of his application for SSI benefits. 20 C.F.R. §§ 404.1563(b), 416.963(b); see Shumaker v. Astrue, __ F.Supp.2d __, 2009 WL 3049263, at * 6-7 (D.Mont. 2009) ("The regulation[s] direct[] the ALJ to consider [plaintiff's] age throughout the time period for which disability is sought, not just the alleged onset date."). Since April 13, 2007, the date of his fiftieth birthday, plaintiff has been within the requisite age range to be considered a person "approaching advanced age (age 50-54)" for the purposes of a grids analysis. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g); 20 C.F.R. §§ 404.1563(d), 416.963(d); Allen v. Bowen, 881 F.2d 37, 39 (3rd Cir. 1989) (noting finding that SSI claimant who was 50 years old at the time of the administrative hearing was a "person approaching advanced age"). Furthermore, plaintiff's age even before his fiftieth birthday may have affected the overall disability determination in this case. The ALJ is not to "apply the age categories mechanically in a borderline situation." 20 C.F.R. §§ 404.1563(a), 416.963(a). Rather, the regulations require that when a claimant is close to "reaching an older age category, and using the older age category would result in a determination . . . that [the claimant is] disabled," the ALJ must "consider whether to use the older age category after evaluating the overall impact of all the factors in [the] case." 20 C.F.R. §§ 404.1563(b), 416.963(b).

Courts are not entirely consistent regarding the point during a social security benefits claim that a claimant must reach an age category (or be close to reaching an age category) for the purposes of a "borderline" age analysis. See Lewis v. Commissioner of Social Sec., __ F.Supp.2d __, 2009 WL 3273799, at * 5 (E.D.Mich. 2009). However, some courts have found that in SSI cases, the claimant must show that he is close to a higher age category by the date of the ALJ's

---

[9] Because the ALJ's decision is undated, the Court cannot discern exactly how old plaintiff was at the time of the decision. Plaintiff's date of birth is April 13, 1957 [AR at 48], he was nearly 51 years old on March 17, 2008, the date that his hearing was scheduled to take place [AR at 34], and was 51 years old on May 15, 2008, when he requested review of the hearing decision. [AR at 45.]

decision. See, e.g., Crawford v. Barnhart, 556 F.Supp.2d 49, 53 (D.D.C. 2008) ("In determining whether a given [SSI] case presents a borderline age situation, the relevant date is when the ALJ issues his opinion.") (remanding to determine appropriate age category for SSI claimant who was 46 days shy of reaching a higher age category at the time of the ALJ's decision); Swan v. Barnhart, 2004 WL 1529270, at * 9 n. 12 (D.Me. April 30, 2004) ("For SSI purposes, entitlement to borderline-age consideration is measured as of the date of the administrative law judge's decision."); see also Metaxotos v. Barnhart, 2005 WL 2899851, at * 7-8 (S.D.N.Y. November 3, 2005) (remand to consider whether an SSI applicant who became 50 years old six months and fourteen days after the ALJ's decision constituted "a borderline age situation").

Here, although plaintiff was approximately 51 years old when the ALJ issued his decision, in relying on a grid section that only applies to "younger individuals" (age 18-49) [see AR at 14-15; 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.20], the ALJ failed to address the relevancy of plaintiff's age. Specifically, the ALJ failed to discuss whether plaintiff's age impacted the grids analysis, whether plaintiff should be considered part of the "approaching advanced age" category for the period of time since his fiftieth birthday, or whether his age should be found to be "borderline," thereby putting plaintiff into the "approaching advanced age" category for the duration of his SSI claim. Indeed, if plaintiff had been placed in the "approaching advanced age" category for all or part of the relevant time period, considering plaintiff's RFC to do sedentary work, his high school education, and his unskilled work experience, § 201.12 of the grids would require a finding that plaintiff has been disabled. See 20 C.F.R. Part 404, Subpt. P, App. 2, §§ 201.00(g), 201.12. "Without a record of the ALJ's reasoning regarding plaintiff's borderline age, it is impossible for this Court to determine that the ALJ expressly considered which age category to use," as required by 20 C.F.R. § 416.963(b). Corbin v. Astrue, 2009 WL 799268, at * 12 (E.D.Cal. March 23, 2009); see Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000) (noting remand to reconsider the disability status of a claimant who turned 50 years old after filing his application for disability benefits); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1229 n.9 (9th Cir. 2009) (remand to reconsider disability status of claimant who aged into an older disability age category since the ALJ's decision). Since plaintiff's age may change the disability determination in this case for all

or part of the relevant time period, remand is necessary for the ALJ to properly consider the effect of plaintiff's age.

Finally, the ALJ's sole reliance on the grids was improper because he failed to consider whether plaintiff's non-exertional impairments were sufficiently severe to require the testimony of a vocational expert, rather than a grids analysis. "[S]ignificant non-exertional impairments . . . may make reliance on the grids inappropriate." Tackett, 180 F.3d at 1101-02 (citing Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 577 (Pregerson, J., concurring) (9th Cir.1988)). Because there is evidence that plaintiff has non-exertional limitations, before applying a grids analysis, "[t]he ALJ should [have] first determine[d] if [plaintiff's] non-exertional limitations significantly limit the range of work permitted by his exertional limitations." Id. In the decision, the ALJ only offered a conclusory remark that plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." [AR at 14-15.] He failed to substantively discuss plaintiff's non-exertional limitations, let alone whether these limitations significantly impact plaintiff's ability to work, and did not address whether a vocational expert's testimony was needed in this case.[10] [Id.] Since the ALJ failed to properly consider plaintiff's non-exertional limitations, the Court cannot find that it was appropriate for the ALJ to use the grids, rather than a vocational expert's testimony, to determine if plaintiff is disabled. See Baker v. Astrue, 2009 WL 890728, at * 6 (C.D.Cal. March 31, 2009) ("The ALJ's conclusory statements and references to the Rulings are insufficient to constitute substantial evidence in support of his use of the grids to direct a finding of 'not disabled.'"); Lasswell v. Astrue, 2008 WL 4330273, at * 5-6 (C.D.Cal September 19, 2008) (ALJ erred in failing to determine if plaintiff's non-exertional limitations constituted significant limitations requiring vocational expert testimony, rather than application of the grids). The ALJ's

---

[10] To the extent defendant asserts that plaintiff's non-exertional limitations assessed by Dr. To, Dr. Ross, and Dr. Woodard are insignificant [JS at 17], the Court is limited to reasons actually cited by the ALJ in support of his decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts. . . . It was error for the . . . court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss.") (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)).

improper reliance on the grids and failure to determine if a vocational expert's testimony was necessary warrants remand.[11]

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to: (1) properly consider the assessments of Dr. Ross, Dr. To, and Dr. Woodard; (2) if necessary, obtain testimony from a vocational expert and

/
/
/
/
/
/
/
/
/
/

---

[11] On remand, unless the Commissioner decides to grant benefits without a hearing, the ALJ must provide plaintiff the opportunity to testify on his own behalf. In the decision, the ALJ asserted that plaintiff's request for transfer or continuance of his March 17, 2008, hearing was "untimely" and "frivolous." [AR at 9.] The ALJ determined that plaintiff was a non-essential witness and that he had waived his right to appear, especially because he was represented by counsel. [Id.] The ALJ's assertions are not fully supported by the record as the record indicates that plaintiff called to inform the SSA that he had moved three to four weeks prior to his hearing and that he did not have transportation to travel the more than 75 miles to the hearing site from his new residence. [AR at 9, 43.] Plaintiff was not represented by an attorney in March 2008 when he missed his hearing because his former attorney, William M. Kuntz, withdrew on February 14, 2008, and plaintiff did not retain his current attorney, Bill Latour, until May 15, 2008. [AR at 5, 9, 93.]

16

plaintiff; and (3) reconsider plaintiff's RFC and ability to work in light of the hearing testimony (if any), the reconsidered medical opinions, and plaintiff's age.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 8, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

17